UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| GARETH E. PITTS,<br><br>        Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN,[1]<br><br>        Defendant. | Case No. 2:12-cv-01109-JCM-PAL<br><br>**REPORT OF FINDINGS AND**<br>**RECOMMENDATION**<br><br>(Mtn to Reverse - Dkt. #21)<br>(Mtn to Affirm - Dkt. #27) |

  This case involves judicial review of administrative action by the Commissioner of Social Security denying Plaintiff Gareth E. Pitts' claim for Disability Insurance Benefits and/or Supplemental Security Income under Title XIV of the Social Security Act (the "Act") and for disability insurance benefits under Title II of the Act.

## BACKGROUND

  On December 3, 2009, Plaintiff filed his application for benefits, alleging he became disabled on October 27, 2009. AR[2] 119-129. The Social Security Administration ("SSA") denied Plaintiff's application initially and on reconsideration. AR 61-64, 71-73, 75-77. A hearing before an administrative law judge ("ALJ") was held on June 21, 2011. AR 47-79. In a decision dated July 7, 2011, the ALJ found Plaintiff was not disabled. AR 20-26. The ALJ's decision became the Commissioner's final decision when the Appeals Counsel denied review on April 26, 2012. AR 1-3.

  On June 26, 2012, Plaintiff filed an Application to Proceed In Forma Pauperis (Dkt. #1) and submitted a Complaint (Dkt. #3) in federal court, seeking judicial review of the Commissioner's

---

  [1]Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she is substituted for Michael J. Astrue as the Defendant in this matter.

  [2]AR refers to the Administrative Record, which was delivered to the undersigned upon the Commissioner's filing of her Answer (Dkt. #18) on March 5, 2013.

decision pursuant to 42 U.S.C. § 405(g).  The Commissioner filed her Answer (Dkt. #18) on March 5, 2013.  Plaintiff filed a Motion for Remand (Dkt. #21) on April 16, 2013.  The Commissioner filed a Motion to Affirm and Opposition (Dkt. #27) on June 12, 2013.  The court has considered the Motion to Remand and the Opposition and Cross-Motion.

## DISCUSSION

### I. Judicial Review of Disability Determination

District courts review administrative decisions in social security benefits cases under 42 U.S.C. § 405(g).  *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).  The statute provides that after the Commissioner of Social Security has held a hearing and rendered a final decision, a disability claimant may seek review of the Commissioner's decision by filing a civil lawsuit in federal district court in the judicial district where the disability claimant lives.  *See* 42 U.S.C. § 405(g).  That statute also provides that the District Court may enter, "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  The Ninth Circuit reviews a decision of a District Court affirming, modifying, or reversing a decision of the Commissioner de novo.  *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2003).

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g); *see also Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005).  However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence.  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n. 1 (9th Cir. 2005).  In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

1        Under the substantial evidence test, the Commissioner's findings must be upheld if supported by
2   inferences reasonably drawn from the record. *Batson,* 359 F.3d at 1193.  When the evidence will
3   support more than one rational interpretation, the court must defer to the Commissioner's interpretation.
4    *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see also Flaten v. Sec'y of Health and Human*
5   *Serv.,* 44 F.3d 1453, 1457 (9th Cir. 1995).  Consequently, the issue before the court is not whether the
6   Commissioner could reasonably have reached a different conclusion, but whether the final decision is
7   supported by substantial evidence.
8        It is incumbent on the ALJ to make specific findings so that the court does not speculate as to
9   the basis of the findings when determining if the Commissioner's decision is supported by substantial
10  evidence.  Mere cursory findings of fact without explicit statements as to what portions of the evidence
11  were accepted or rejected are not sufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981).
12  The ALJ's findings "should be as comprehensive and analytical as feasible, and where appropriate,
13  should include a statement of subordinate factual foundations on which the ultimate factual conclusions
14  are based." *Id.*

15  **II.     Disability Evaluation Process**

16       The claimant has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182
17  (9th Cir 1995), *cert. denied*, 517 U.S. 1122 (1996).  To meet this burden, a claimant must demonstrate
18  an "inability to engage in any substantial gainful activity by reason of any medically determinable
19  physical or mental impairment which can be expected . . . to last for a continuous period of not less than
20  12 months." 42 U.S.C. § 423(d)(1)(A).  The claimant must provide "specific medical evidence" to
21  support his or her claim of disability.  If a claimant establishes an inability to perform his or her prior
22  work, the burden shifts to the Commissioner to show that the claimant can perform other substantial
23  gainful work that exists in the national economy. *Batson*, 157 F.3d at 721.
24       The ALJ follows a five-step sequential evaluation process in determining whether an individual
25  is disabled. *See* 20 C.F.R. § 416.920; *see also Bowen v. Yuckert,* 482 U.S. 137, 140 (1987).  If at any
26  step, the ALJ makes a finding of disability or non-disability, no further evaluation is required. *See* 20
27  C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *see also Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). The
28  first step requires the ALJ to determine whether the individual is currently engaging in substantial

gainful activity ("SGA").  *See* 20 C.F.R. §§ 404.1520(b) and 416.920(b).  SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities, usually for pay or profit.  *See* 20 C.F.R. §§ 404.1572(a)-(b) and 416.972(a)-(b).  If the individual is currently engaging in SGA, then a finding of not disabled is made.  If the individual is not engaging in SGA, then the analysis proceeds to the second step.

The second step addresses whether the individual has a medically-determinable impairment that is severe or a combination of impairments that significantly limits him or her from performing basic work activities.  *See* 20 C.F.R. §§ 404.1520(c) and 416.920(c).  An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work.  *See* 20 C.F.R. §§ 404.1521 and 416.921; Social Security Rulings ("SSRs") 85-28, 96-3p, and 96-4p.[3]  If the individual does not have a severe medically-determinable impairment or combination of impairments, then a finding of not disabled is made.  If the individual has a severe medically-determinable impairment or combination of impairments, then the analysis proceeds to the third step.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appedix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926.  If the individual's impairment or combination of impairments meet or equal the criteria of a listing and meet the duration requirement (20 C.F.R. §§ 404.1509 and 416.909), then a finding of disabled is made.  *See* 20 C.F.R. §§ 404.1520(h) and 416.920(h).  If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to the next step.

/ / /

---

[3] SSRs are the SSA's official interpretations of the Act and its regulations.  *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R. § 402.35(b)(1).  They are entitled to some deference as long as they are consistent with the Act and regulations.  *See Bray,* 554 F.3d at 1223 (finding ALJ erred in disregarding SSR 82-41).

Before considering step four of the sequential evaluation process, the ALJ must first determine the individual's residual functional capacity ("RFC"). *See* 20 C.F.R. §§ 404.1520(e) and 416.920(e). RFC is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* SSR 96-8p. In making this finding, the ALJ must consider all the relevant evidence such as symptoms and the extent to which they can reasonably be accepted as consistent with the objective medical evidence and other evidence. *See* 20 C.F.R. §§ 404.1529 and 416.929; SSRs 96-4p and 96-7p. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

The fourth step requires the ALJ to determine whether the individual has the RFC to perform his past relevant work ("PRW"). *See* 20 C.F.R. §§ 404.1520(f) and 416.920(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last fifteen years or fifteen years prior to the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and to perform it as SGA. *See* 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), and 416.965. If the individual has the RFC to perform his past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to the fifth and final step.

Step five requires the ALJ to determine whether the individual is able to do any other work considering his residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(g) and 416.920(g). If he or she can do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Yuckert*, 482 U.S. at 141-42.

///

**II.     Factual Background.**

Both sides stipulated that the ALJ fairly and accurately summarized the medical and non-medical evidence in the record.

**III.    The ALJ's Decision.**

The ALJ followed the five-step sequential evaluation process set forth at 20 C.F.R. §§ 404.1520 and 416.920, and issued an unfavorable decision denying the claim for benefits on July 7, 2011.  AR 17-30.  At step one, the ALJ found that Plaintiff had not engaged in SGA since October 27, 2009, the alleged onset date.

At step two, the ALJ found that Plaintiff had the severe medically determinable impairments of bipolar disorder and personality disorder.  Plaintiff was treated at Southern Nevada Adult Mental Health Services ("SNAMHS") with medication and counseling, and admitted once at the SNAMHS clinic and twice at St. Rose Dominican Hospital for depressive symptoms, which were stabilized with medication.  Plaintiff also had a history of alcohol abuse, and was arrested once for public intoxication. He found that these impairments, in combination, more than minimally affected the Plaintiff's ability to perform basic work activities.  The ALJ also found that Plaintiff had sarcoidosis, which was controlled and non-severe, individually and in combination with the other impairments.  Plaintiff had not been treated for this condition in recent years, and significant laboratory data were within normal limits.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 listing 12.04 paragraph B, and paragraph C.  Specifically, he found that Plaintiff did not satisfy paragraph B criteria because the Plaintiff only had mild restrictions in the activities of daily living.  The evidence in the record indicated he was able to carry out adaptive activities such as cooking, cleaning, and shopping.  Additionally, the state physician, Jocelyn Fuller, Ph.D, found he had mild restriction in this area.  The ALJ also found the Plaintiff had mild difficulties in social functioning. In this respect, he disagreed with the state physician who found he had moderate difficulties in this area because the ALJ found there was not enough evidence in the record to support this finding.  The ALJ cited portions of the record indicating that when asked, Plaintiff indicated he got along well with authoritative figures.  The ALJ concluded that this tends to suggest he was able to interact appropriately

with others.  The ALJ found that Plaintiff had moderate difficulties regarding concentration, persistence or pace, again disagreeing with the assessment made by the state physician who concluded Plaintiff only had mild difficulties.  The ALJ also found that the Plaintiff had not experienced episodes of decompensation of extended duration.  For all of these reasons, he found that the Plaintiff's mental impairments did not cause at least two "marked" limitations or one "marked" limitation and repeated episodes of decompensation of extended duration and therefore, the paragraph B criteria were not satisfied.

The ALJ also found that Plaintiff did not satisfy the paragraph C criteria which require a showing of:

> A medically documented history of chronic affective disorder of at least two years duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychological support, and one of the following:
>
> 1. Repeated episodes of decompensation, each of extended duration; or
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
> 3. Current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

After consideration of the entire record, the ALJ concluded that Plaintiff had the RFC to perform a full range of work at all exertional levels with the non-exertional limitations of simple tasks and simple instructions.  He made this finding considering all Plaintiff's reported symptoms and the extent to which the symptoms could reasonably be accepted as consistent with objective medical evidence and other evidence based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929 and SSRs 96-4p and 96-7p.  Mr. Pitts' alleged disability due to his mental illness accompanied with depressive symptoms.    Plaintiff indicated that he stopped working and was unable to perform any type

of work because he had problems focusing and difficulties concentrating for long periods. Plaintiff claimed he was able to function independently before his illness, but was now unable to sleep for eight hours because of nightmares. Plaintiff stated he had trouble taking care of his grooming and hygiene, did not drive because he got easily distracted, did not manage his financial affairs, and was socially isolated. Plaintiff also claimed he had problems with his memory and difficulty completing tasks and understanding instructions.

The ALJ found that the Plaintiff's statements concerning the intensity, persistence, pace and limiting effects of the symptoms Plaintiff reported were not credible to the extent they were not consistent with the residual functional capacity assessment. He also found that the Plaintiff's allegations of disabling symptoms were disproportionate to the minimal objective findings and inconsistent with medical opinion evidence. He made a finding that the Plaintiff was less than credible on multiple grounds including that the record did not support his allegations and the record contained indications that his allegedly disabling symptoms may have been present at approximately the same level of severity prior to the alleged onset date. Plaintiff's earnings record and work history indicated he continued to work until 2009, and the fact that Plaintiff's impairments did not prevent him from working at that time strongly suggested that it would not currently prevent work. Additionally, he found the greater weight of evidence indicated the Plaintiff's conditions did not worsen from the alleged onset date. Although the Plaintiff had been hospitalized on three occasions for depressive symptoms in June 2007, July 2008, and September 2009, his mental status deteriorated because the Plaintiff was non-compliant with medication or because of one-time stressors unlikely to reoccur. For example, the ALJ noted the Plaintiff had legal problems, an arrest for public intoxication, and his home was being foreclosed. On each hospitalization, staff stabilized his condition with medication and when asked, the Plaintiff answered that his conditions had not worsened. Treatment notes also demonstrated that temporary exacerbations of symptoms were controlled after a trial-and-error period of medication adjustment.

The ALJ also found the record reflected gaps in the Plaintiff's history of treatment which called his credibility into question. Specifically, treatment notes from SNAMHS showed that when the Plaintiff got medical insurance he stopped going to an SNAMHS and his case was closed in September

2008. The Plaintiff returned to SNAMHS in December 2008 after he lost his insurance and did not see a clinician during the time he had insurance. This led the ALJ to conclude that the Plaintiff's symptoms were not as bothersome as alleged. Additionally, although Plaintiff stated he had not worked after the alleged onset date, the record revealed this may not have been true. Plaintiff testified at the hearing that he was not "straightforward" with his doctor when explaining why his doctors did not believe his conditions were severe. The fact that Plaintiff provided inaccurate information to his doctors suggested to the ALJ that much of what the Plaintiff alleged might be similarly unreliable.

The ALJ reviewed the record and determined that it did not contain any opinions from treating or examining physicians indicating the Plaintiff had limitations greater than the ALJ determined. He afforded the non-medical opinion in the record little weight because it was inconsistent with the record as a whole. He gave significant weight to the Disability Determination Service's residual functional capacity conclusions because the record as a whole supported them.

At step four, the ALJ found that Plaintiff was not capable of performing his past relevant work as a driver, dealer, care technician and caseworker which were all semi-skilled jobs according to the Dictionary of Occupational Titles.

At step five, the ALJ found that considering the Plaintiff's age, education, work experience and residual functional capacity there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform. Although he found the Plaintiff's ability to perform work at all exertional levels had been compromised by non-exertional limitations, he found these limitations have little or no effect on the occupational base of unskilled work at all exertional levels. He found the Plaintiff was not disabled because his non-exertional limitations have only a slight effect on occupational base. He therefore found that the Plaintiff was not entitled to disability benefits because he was not disabled as defined by the Social Security Act from October 27, 2009, through the date of his decision.

**IV.     The Parties' Positions.**

       **A.     Plaintiff's Motion for Reversal and/or Remand**.

The Plaintiff argues that the ALJ committed legal error because his determination that Mr. Pitts is not disabled is not supported by substantial evidence. Plaintiff also argues that the ALJ improperly assessed his subjective symptom testimony in assessing residual functional capacity and erred in

evaluating Plaintiff's symptoms under the two-step analysis required by Social Security Ruling 96-7p. Specifically, Plaintiff argues that the ALJ's decision is "void of any sufficient rationale" why the ALJ ignored and disregarded the Plaintiff's testimony concerning the intensity, persistence, pace and limiting effects of the symptoms he reported. Plaintiff claims the ALJ rejected his testimony based on a belief that the testimony was not fully credible because it was inconsistent with what the ALJ believed it should be which is not the correct legal standard. Rather, the standard articulated in the Ninth Circuit's decision in *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) requires the ALJ to make specific findings supporting his conclusions which are supported in the record and sufficiently specific to allow a reviewing court to conclude the ALJ rejected the testimony on permissible grounds. In this case, the ALJ used boilerplate language which is legally insufficient to support his determination that the Plaintiff was not credible. The Plaintiff argues that at best, it appears the ALJ rejected his testimony based on the ALJ's belief the testimony was not credible because it lacked support in the objective medical evidence. However, Plaintiff argues this rationale is legally insufficient and inconsistent with the regulations which prohibit rejecting subjective pain testimony solely on the basis of objective medical evidence.

      The ALJ must articulate clear and convincing reasons for rejecting the Plaintiff's testimony regarding subjective symptoms where the record supports the existence of medical conditions reasonably likely to produce the subjective symptoms, and no evidence of malingering exists. The ALJ found Plaintiff suffered from severe medical impairments likely to produce subjective limitations, but did not provide clear and convincing reasons for rejecting the Plaintiff's testimony. The ALJ's reliance on the Plaintiff's ability to perform minimal daily activities is insufficient to conclude that the Plaintiff was not credible. Regulations and cases construing them make it clear that the fact that a Plaintiff is able to perform some minimal daily activities and struggles to work does not make him unbelievable or demonstrate he is not disabled.

      Plaintiff also argues that the ALJ gave short shrift to the Plaintiff's work history which demonstrates Plaintiff began working at age thirteen and had consistent, continuous employment from 1984 until the alleged dated of onset in 2009. This work history is probative of credibility because it shows a work ethic and work history and belies a suggestion that the Plaintiff simply woke up one day

and decided not to work anymore. In this case, the ALJ found that the Plaintiff testified credibly when he described the things that he could do, but found the claimant lacking in credibility when he described the extent of his medical impairments. The Plaintiff's testimony demonstrates that he is disabled, and the ALJ committed reversible error by not articulating clear and convincing reasons to reject his testimony. The court should therefore reverse the decision and remand for an award of benefits, or in the alternative, reverse the decision and remand for correction of the legal errors.

**B.     The Commissioner's Cross Motion to Affirm and Opposition**.

The Commissioner argues that the ALJ's credibility finding is supported by substantial evidence. The ALJ properly concluded that the record lacked evidence to support the extent of Plaintiff's subjective complaints. The Commissioner acknowledges that the ALJ is required to make specific credibility findings that must be properly supported by the record and sufficiently specific to ensure a reviewing court that the ALJ did not arbitrarily discredit a claimant's subjective testimony. However, in this case, the ALJ provided eight valid reasons for finding the Plaintiff was not fully credible, and substantial evidence in the record supported these reasons.

Plaintiff's Motion to Remand only challenges the ALJ's finding regarding inconsistency with the objective medical evidence and has therefore waived any argument regarding the remaining reasons. The ALJ's decision considered and discussed his conclusion that the extent of Plaintiff's subjective complaints were not supported in the medical records. The ALJ also reasonably concluded that Plaintiff's admission that he did not provide accurate information to his treating physician impaired his credibility. For example, the Plaintiff testified he had heard voices for thirty years, yet denied hallucinations to his doctor. When questioned at the hearing by the ALJ about this discrepancy, the Plaintiff admitted that he did not tell his doctor he heard voices and had not always been straightforward with his doctor. The Commissioner cites other portions of the record indicating the Plaintiff has not provided accurate information to his treating physicians and argues the ALJ reasonably concluded that the Plaintiff's failure to provide accurate information indicated his present allegations may also be unreliable.

The ALJ also cited conflicts between the medical opinion evidence and Plaintiff's subjective complaints giving significant weight to the opinion of non-examining state agency psychologist Jocelyn

Fuller, Ph.D.  The ALJ observed that there are no opinions from treating physicians that contradicted the RFC, and that Plaintiff does not challenge Dr. Fuller's opinions regarding Plaintiff's RFC which are consistent with the record as a whole.  Plaintiff has also not controverted the ALJ's finding that Plaintiff was able to work while impaired with the allegedly disabling symptoms he claimed.  The Commissioner argues that Plaintiff's treatment records are consistent with the ALJ's conclusion that Plaintiff's symptoms were present at least at the same level of severity prior to the alleged onset date.  Thus, the ALJ could correctly conclude that Plaintiff's impairments did not prevent him from working.  Contrary to Plaintiff's assertions, the ALJ considered the Plaintiff's work history including whether the Plaintiff worked after the alleged onset date.  Although reasonable minds may differ on the interpretation of the evidence, the ALJ reached a reasonable conclusion, supported by substantial evidence, which the court may not second guess.

      The ALJ also cited the effectiveness of medication in controlling Plaintiff's symptoms, and reasonably concluded Plaintiff's non-compliance with medication caused a deterioration in his symptoms.  Both of these findings are supported in the record and were appropriately considered as detracting from Plaintiff's credibility.  The ALJ also properly concluded that gaps in Plaintiff's treatment history contradicted his subjective complaints of disabling symptoms.  Finally, the ALJ reasonably considered Plaintiff's inconsistent statements regarding his work history in making his credibility determination.  For example, the Plaintiff testified that he did not work after his alleged onset date, but medical records indicated he was working on a part-time basis assisting his girlfriend cleaning pools.  Notes in the medical records of his treating physician also indicate Plaintiff reported part-time employment.  The ALJ provided numerous legally sufficient reasons to discount Plaintiff's credibility, and to the extent that he may have erroneously assessed any of the cited credibility factors against the Plaintiff, the error is harmless.  Substantial evidence supported the ALJ's overall credibility finding, and his determination should be upheld.

      If the court disagrees that substantial evidence supported the ALJ's decision, the proper remedy is to remand the matter to the agency for further findings regarding the credibility of the Plaintiff's subjective statements, rather than for an award of benefits.

/ / /

V.     **Analysis and Findings**

Plaintiff stipulated that the ALJ fairly and accurately summarized the medical and non-medical evidence of record. His legal challenge to the determination that Plaintiff was not disabled is based on arguments the ALJ committed legal error in assessing the Plaintiff's subjective symptom testimony in assessing residual functional capacity. Specifically, Plaintiff claims the ALJ did not evaluate the Plaintiff's subjective symptoms under the two-step analysis required by SSR 96-7p. Plaintiff claims that the ALJ's decision ignored and disregarded his testimony. The ALJ considered, but did not find credible, the Plaintiff's testimony concerning intensity, persistence, pace and limiting effects of his symptoms to the extent they were inconsistent with the residual functional capacity assessment. Plaintiff does not claim that his mental impairments meet or medically equal one of the listed impairments. Rather, he challenges the ALJ's determination that he has the residual functional capacity to perform a full range of work at all exertional levels with the non-exertional limitations of simple tasks and simple instructions. Reviewing the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion, the court finds the ALJ's decision is supported by substantial evidence, and the ALJ did not commit legal error.

The ALJ considered the disabling symptoms the Plaintiff alleged. Specifically, he considered Plaintiff's claim that he was disabled due to mental illness accompanied with depressive symptoms which caused him to stop working because he had problems focusing and difficulties concentrating for long periods. The ALJ considered Plaintiff's reports that he was able to function independently before his illnesses, but now unable to sleep for eight hours, had trouble taking care of his grooming and hygiene, and did not drive because he got easily distracted. The ALJ considered Plaintiff's report that he did not manage his own financial affairs, that he was socially isolated, and that he had problems with memory and difficulty completing tasks and understanding instructions. However, the ALJ concluded that Plaintiff's bipolar disorder and personality disorder did not appear to interfere with Plaintiff's ability to perform all exertional activities. The ALJ found the state agency's RFC assessment and Plaintiff's treatment history demonstrated Plaintiff was able to perform all exertional activities with limitations to simple tasks and simple instructions. Substantial evidence in the record supports these findings. The ALJ found that the Plaintiff's impairments and subjective symptoms precluded him from

performing his past relevant work, but that he had the residual functional capacity to perform jobs involving simple tasks and simple instructions.

In making his RFC determination, the ALJ was required to consider whether the Plaintiff's reported symptoms were consistent with objective medical evidence and other evidence in the record. He found the Plaintiff was not credible for a number of reasons that he articulated which have substantial support in the record. For example, the ALJ found the Plaintiff was not credible because he testified he had suffered hallucinations for thirty years. However, multiple references in the medical record indicated Plaintiff denied hallucinations. AR 224, 226, 228, 244.

The record supports the ALJ's finding that Plaintiff's symptoms were not as disabling as he claims because Plaintiff had a long history of depression, was treated for depression, and remained gainfully employed suggesting, as the ALJ found, that his symptoms did not prevent him from working before October 27, 2009, the alleged date of onset. The SNAMHS records reflect Plaintiff reported he had suffered depression since childhood. AR 226. Plaintiff was hospitalized in June 19 through July 5, 2007 for suicidal ideation. AR 226-231. H reported he had been arrested for public intoxication. AR 227. The discharge notes reflect that he took himself to the emergency room for help and reported that he had been non-compliant with his medication. AR 247. Plaintiff was seen at SNAMHS on July 16, 2007, post-hospitalization, and stated he was working again and feeling good. AR 253. He denied suicidal ideation, homicidal ideation, hallucinations or mania. *Id.* A multi-disciplinary evaluation mental status exam conducted July 23, 2007, reflects the Plaintiff reported he was "feeling good". AR 225. He denied depressive feelings or suicidal thoughts, that he had been drinking alcohol or gambling, and stated that he had been attending Gambler's Anonymous meetings. *Id*. He reported he was working two jobs. *Id*. There are multiple other references in the medical records indicating Plaintiff reported he was working, working part time, and/or working helping his girlfriend clean pools until he reported he quit his job a month earlier at a November 30, 2009 appointment. AR 289.

The ALJ found the Plaintiff was not credible in alleging disabling symptoms because his symptoms had not worsened since the alleged date of onset. He acknowledged that the Plaintiff was twice hospitalized at St. Rose Dominican on July 28, 2008, and September 13, 2009. However, he found that in both cases, this was because Plaintiff had not been compliant with his medications which

effectively treated his condition, or was experiencing one-time stressors which were unlikely to reoccur. The record supports these findings. Plaintiff was admitted at St. Rose Dominican on July 28, 2008, complaining of depression and suicidal ideation. At that time he reported that he had a history of major depression and had recently changed his lifestyle, was working the night shift at Terrible's Casino, and had tried to adjust his medications. AR 278.

On September 13, 2009, he was admitted at St. Rose Dominican complaining of depression and suicidal ideation. He indicated that he had been depressed for a couple of weeks, and that his house was going into foreclosure. AR 282. He cut himself with a box knife on his right wrist at work and decided to go to the emergency room for evaluation. *Id*. Examination revealed the lacerations on his wrist were "very superficial, not even through the skin" with no active bleeding. *Id*. However, he was admitted with a clinical impression of major depressive episode, suicidal gesture. AR 282-283. Approximately three weeks before he was hospitalized, he was seen at SNAMHS on August 26, 2009. He reported he was working full time, living with his girlfriend, getting along well, and that his current medications were working. AR 289. The progress notes indicated that he presented with no problems. *Id*. Approximately two months before his hospitalization, on a July 15, 2009 visit, he reported he was stable on his maintenance medications, denied mania or symptoms of depression and hallucination, but stated he occasionally had suicidal thoughts without any intent or active plan. He reported he was living with his girlfriend, working steadily as a cashier, and helping his girlfriend clean pools. AR 290. Two-and-a-half months after his hospitalization he was seen at SNAMHS on November 30, 2009, and stated that he had forgotten to take his medications for the past five days and had just quit his job a month earlier. AR 289.

In short, there is ample support in the record for the ALJ's findings that the Plaintiff continued to work through the date of alleged onset despite his mental impairments and depressive symptoms until he reported he quit his job a month earlier at a November 30, 2009 visit to SNAMHS. There was also ample support in the record for the ALJ's findings that the Plaintiff's hospitalizations followed periods of non-compliance with medications and the stressors of being arrested for public intoxication and a home foreclosure.

/ / /

The record also supports the ALJ's findings that Plaintiff's condition did not worsen after the alleged date of onset, although his medications were adjusted. SNAMHS progress notes on January 12, 2010, indicate he was doing okay on his maintenance medications and less depressed since prescribed lithium, but he still had suicidal thoughts that he will not act upon. AR 322. He reported increased symptoms and medication compliance March 9, 2010, and his medications were adjusted. AR 321. He missed his next scheduled visit on April 6, 2010. *Id*. On June 22, 2010, he reported that Seroquel had been effective, that he had been sleeping well without racing thoughts or excess irritability. He still reported depression and low energy, but was alert, exhibited no psychotic symptoms or suicidal or homicidal ideation. *Id*. On July 2, 2010, he requested adding Abilify to his medications because he reported his depression was the same and his energy was still low as well as his motivation, and wanted to see if Abilify would help. *Id*.

The ALJ found that the medical record did not indicate that any treating or examining physician had opined that Plaintiff could not work as a result of his mental impairments. The record supports this finding. The record also supports the ALJ's finding that the Plaintiff was not credible because he acknowledged he had not been accurate or straightforward with his treating physicians about his symptoms. At the hearing, the ALJ asked him how long he had been having hallucinations and hearing voices. He answered thirty years. AR 49. The ALJ noted that in 2007, he denied having hallucinations when asked by his doctor. The Plaintiff acknowledged that he did not tell his doctor he had been having hallucinations "until later on". *Id*. He testified that he told the doctor later and "came clean" because before then, he thought he could "beat this thing" because he had a degree, was a sociologist, and did not need a doctor. *Id*., The ALJ noted that the medical records had not indicated that the Plaintiff had mentioned hearing voices on the last visit preceding the hearing. Plaintiff responded "I know that" and acknowledged that when the doctor asked him, the Plaintiff said, "I'm doing fine, I'm doing better." *Id*., The ALJ asked the Plaintiff about medical records in 2010 reporting that Plaintiff had good insight and judgment, cognitive functioning was intact, not having suicidal ideation, and seemed normal, alert and oriented. *Id*., 53-54. Plaintiff responded that everything after 2010 was the result of treatment and the medication had helped him "greatly." *Id*., AR 54. He went on to testify that he had done well on medicine, but still had problems. He testified: "I've not always come forward and

been straightforward with the doctor on certain aspects of it because, like I said, I though I could beat the system, you know, I can beat it and I didn't need it." *Id*.

The record amply supports the ALJ's credibility findings that Plaintiff's mental impairments were not as disabling as Plaintiff claimed.

## VI. Conclusion

Judicial review of a decision to deny disability benefits is limited to determining whether the decision is based on substantial evidence reviewing the administrative record as a whole. If the record will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. If the evidence can reasonably support either affirming or reversing the ALJ's decision, the court may not substitute its judgment for the ALJ's. *Flaten*, 44 F.3d at 1457. It is the ALJ's responsibility to make findings of fact, drawing reasonable inferences from the record as a whole, and to resolve conflicts in the evidence and differences of opinion. Having reviewed the Administrative Record as a whole, and weighing the evidence that supports and detracts from the Commissioner's conclusion, the court finds that the ALJ's decision is supported by substantial evidence under 42 U.S.C. § 405(g).

For all of the foregoing reasons,

**IT IS RECOMMENDED**:

1. Plaintiff's Motion to Remand (Dkt. #21) be **DENIED**.

2. The Commissioner's Cross-Motion to Affirm (Dkt. #27) be **GRANTED**.

Dated this 30th day of January, 2014.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE